J-A10011-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: N.L.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.W.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1192 MDA 2021 |

Appeal from the Decree Entered August 11, 2021
In the Court of Common Pleas of Berks County
Orphans' Court at No(s):  87381


BEFORE:  PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: MAY 6, 2022**

J.W.L. ("Father") appeals *pro se* from the decree terminating his parental rights to his biological child, N.L.S. ("Child"), who is approximately ten years old.[1] Father purports to raise seven issues on appeal; however, these issues fall into three broad categories. He contends: (1) the orphans' court erred in concluding statutory grounds for termination under 23 Pa.C.S.A. § 2511(a) were established; (2) the orphans' court erred in concluding the

---

[1] We note that Father was represented at the termination hearing by appointed counsel. After the orphans' court entered the order terminating Father's parental rights, he filed a *pro se* notice of appeal even though appointed counsel had not withdrawn. This Court remanded the matter to the orphans' court for a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998) to determine if Father knowingly, intelligently, and voluntarily waived his right to counsel on appeal. After holding the hearing, the orphans' court determined Father had knowingly chosen to proceed *pro se*.

statutory grounds for termination under 23 Pa.C.S.A. § 2511(b) were established; and (3) the dependency court erred in interfering with his ability to have visits with Child before the court changed the goal for Child to adoption. However, we cannot reach Father's issues, as our review of the record indicates the orphans' court failed to comply with the dictates of **In re Adoption of K.M.G.**, 240 A.2d 1218, 1236 (Pa. 2020) when it appointed Child's guardian ad litem to also represent Child's legal interests. We vacate and remand with instructions.

The facts that led to Child being declared dependent are undisputed for purposes of this appeal. Father resides in Philadelphia, while Child resided with her mother in Berks County. On July 3, 2019, Child was declared dependent due to her mother's mental health issues, drug and alcohol abuse, as well as unstable housing and income, and a general lack of appropriate parenting skills.[2] **See** Order of Adjudication and Disposition, 7/3/19, at 1. Child was removed from her mother's home and placed in kinship care in Montgomery County. **See id**., at 1-2. Father was identified as a potential placement for Child, and was directed to cooperate with: (1) drug and alcohol evaluation; (2) random urinalysis; (3) parenting education; (4) casework services from Berks County Children and Youth Services ("the Agency"); (5) mental health evaluation; (6) scheduled visitation with Child; (7) maintaining appropriate

---

[2] Child's mother's parental rights to Child and Child's three half-siblings were terminated at the same time, but those decrees are not subject to this appeal.

housing and income; (8) keeping the Agency informed of any changes in residence or income; and (9) signing necessary releases. *See id*., at 2-3.

The record reflects that Father initially cooperated with the Agency's reunification plan:

> [Father] resides in Philadelphia with his seven year old son. He is temporarily receiving disability benefits due to an accident[] but plans to return to work. He has obtained larger housing[] appropriate for reunification.
>
> Father maintains communication with [the Agency]. He participates in casework and parenting through A Second Chance.
>
> Father visits [Child] once weekly for one hour.

Agency's Exhibit 19, at 9. It is also essentially undisputed that after the dependency court ordered both Father and Child to travel to Berks County (from Philadelphia and Montgomery County, respectively) for visits, Father's compliance with the reunification plan trended towards non-existent. What the parties dispute is the reason for Father's dwindling compliance.

The Agency contended that Father's initial compliance was reluctant, and his frustration with the plan's requirements quickly boiled over into non-compliance. In contrast, Father contended that the Agency and the dependency court unreasonably obstructed his ability to comply with the reunification plan.

To summarize Father's argument, the record reveals at most minor concerns over Father's progress towards reunification for six months after Child was found dependent. At that point, there was a four month pause in

services and visits due to the Covid-19 pandemic. Less than two months after the pause ended, with Father still largely attending classes and visits, the Agency filed for termination and ended any attempt to accommodate Father's hardships in complying with Agency directives. The Agency justified the end of accommodations by pointing to Father's use of video cameras in his home to monitor his elderly relative. Meanwhile, Child was being repeatedly sexually abused by an older half-sibling at the foster placement. The Agency's response to these assaults was to approve the use of in-home video cameras at the foster home.[3]

The orphans' court held a hearing on the Agency's petition to involuntarily terminate the parental rights of Father and Child's mother. After receiving evidence from all parties, the orphans' court entered its decree terminating Father's parental rights to Child. This timely appeal followed.

Again, Father's seven issues on appeal can be grouped into three broad categories. First, Father contends the orphans' court erred in concluding termination was proper under 23 Pa.C.S.A. § 2511(a). Second, he similarly

---

[3] It is undisputed that Child resided with her older half-sibling in the foster home. A psychotherapist testified that, prior to their placement in the foster home, the older half-sibling had been sexually assaulting Child two to three times a week for several years. *See* N.T., Termination Hearing, 6/14/21-7/23/21, at 225. This behavior continued when the children were placed in the foster home, with the last incident in the record occurring at the time of the hearing. *See id*., at 166, 226. The older half-sibling was removed, at least temporarily, from the foster home because of the last incident. *See id*., at 252.

claims the orphans' court erred in concluding grounds for termination had been established pursuant to 23 Pa.C.S.A. § 2511(b). Finally, Father argues the dependency court erred by obstructing his ability to visit with Child by moving visits from his home in Philadelphia to Berks County while this case was still pending.[4]

However, before we may reach the merits of any of Father's issues, we must *sua sponte* address the representation of Child's legal interests in this matter. Relevant to this issue, the orphans' court entered the following order appointing the Guardian ad Litem ("GAL"):

> **AND NOW**, this 28th day of January 2021, Robert A. Frankel, Esquire is hereby appointed as Legal Counsel and Guardian ad Litem to represent the interests of the minor children with regard to the above-captioned matters pursuant to 23 Pa.C.S. § 2313(a). This order is retroactive to June 22, 2020.

Order, 1/28/2021. Our review of the record reveals that Attorney Frankel was acting as GAL as early as the shelter care hearing on June 24, 2019. We have

---

[4] Both the orphans' court and the Agency argue that Father has waived any claim based upon the changes in visitation conditions because he did not immediately appeal them. Due to our resolution of this case, we need not reach this issue. However, we note that the relationship between Father and appointed trial counsel had subsequently become "irretrievably broken." Counsel's application for remand, 10/12/21, at ¶ 7. As a result, we searched the record to determine if trial counsel also represented Father at the dependency review hearing in September 2020. Unfortunately, the record is far from clear on this point. While all other attorneys, including Child's mother's, are explicitly identified by name in the dependency review orders, Father's counsel is consistently only referred to as "Berks Family Law Attorneys." We have been unable to locate anything in the record that defines this term.

discovered no indication that Attorney Frankel was also serving as Child's legal counsel prior to June 22, 2020.

> Where the orphans' court has appointed a single attorney to serve as GAL and legal counsel to represent both the child's best interests and legal interests, our Supreme Court concluded an appellate court should review *sua sponte* whether the court made a determination that those interests do not conflict. The Court cautioned that appellate review of this question does not involve second-guessing whether GAL/Counsel in fact had a conflict but solely whether the orphans' court made the determination in the first instance.

*Interest of A.J.R.O.*, 270 A.3d 563, 570 (Pa. Super. 2022) (citations, brackets, and internal quotation marks omitted). Our *sua sponte* review is limited to determining whether "the orphans' court order (or lack thereof) appointing counsel to represent a child under Section 2313(a)" reveals that the orphans' court "determined that the child's best interests and legal interests do not conflict." *In re Adoption of K.M.G.*, 240 A.2d 1218, 1236 (Pa. 2020).

Since the order appointing Attorney Frankel as both GAL and Child's legal counsel pursuant to Section 2313(a) contains no finding that Child's best interests and legal interests do not conflict, we are constrained to vacate the termination decree and remand for further proceedings.[5] We further observe that Attorney Frankel's letter brief was untimely filed 42 days after Father's brief was filed. *See* Pa.R.A.P. 2185(a)(2)(i) (providing that the appellee's brief

---

[5] We note that Child was not present at the termination hearing and therefore did not testify.

is due 21 days after the appellant's brief is filed in appeals designated as children's fast track). Attorney Frankel's letter brief begins:

> I am writing in my capacity as the court-appointed Guardian Ad Litem for the above-reference[d] minor child in the above-captioned matter.

Appellee's letter brief, filed 3/28/2022, at 1.

We direct the orphans' court to determine whether Child's best interests and legal interests conflict. If the court concludes there has been no conflict, the court is to re-enter its August 11, 2021 decree terminating Father's parental rights to Child. In the alternative, if the court concludes a conflict exists, the court is to appoint separate legal counsel and conduct a new hearing on the petition to terminate Father's parental rights, providing Child's legal counsel the opportunity to advocate on her behalf. In either event, Father will have an opportunity to appeal the court's order. ***See A.J.R.O.***, 270 A.3d at 571, n.11.

Decree vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2022

- 7 -